616 A.2d 79

FRANKFORD HOSPITAL, Petitioner,

v.

WORKMEN'S COMPENSATION APPEAL
BOARD (Mary BURNS), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs June 26, 1992.

Decided Sept. 18, 1992.

William F. Sweeney, for petitioner.

Michael T. Grimes, for respondent.

Before PALLADINO and PELLEGRINI, JJ., and NARICK, Senior Judge.

PELLEGRINI, Judge.

Frankford Hospital (Employer) appeals from an Order of the Pennsylvania Workmen's Compensation Appeal Board (Board) affirming a Referee's Decision granting total disability and medical benefits to Mary M. Burns (Claimant) as a result of contracting chronic Hepatitis B and subsequent inability to obtain employment.

Claimant was employed as a full-time staff nurse at Employer's hospital in Philadelphia, Pennsylvania. Claimant's

duties as a staff nurse included doing blood work, starting IV's, administering blood, and inserting temporary pacemakers and dialysis lines. (20a).[1] In August of 1988, Claimant began working part-time for Employer so she could also work full-time as a nurse manager for North Penn Hospital. (11a–12a). As a result of a pre-employment physical examination required by North Penn, Claimant discovered that she had chronic Hepatitis B.

Claimant continued to work for both Employer and North Penn and attended educational in-service programs at North Penn which discussed the type of precautions to take against the transmission of Hepatitis B. (17a, 22a). Claimant also received an information packet discussing how Hepatitis B is transmitted and what precautions must be taken. (18a, 55a–58a).

In July of 1989, Claimant quit her jobs with the Employer and North Penn to move to Cincinnati, Ohio, where her husband had been transferred by his employer. However, following the move, Claimant was purportedly unable to obtain employment in Cincinnati until July 21, 1990, when she obtained a position as a Pulmonary Clinical Nurse Specialist with Advance Home Health Services at which she continues to be employed.[2] (Referee's Finding of Fact (F.F.) #9; 245a; 193a). On November 10, 1989, during the period she was unemployed, Claimant filed a Claim Petition with the Pennsylvania Bureau of Workmen's Compensation for disability and medical benefits under Section 301(c) of The Pennsylvania Workmen's Compensation Act (Act)[3] as well as for interest, costs and attorney's fees.

The Referee held hearings and issued a Decision finding that Claimant had properly notified the Employer and that she "suffered a total loss of earning power when she was

1. The numbers in the parenthesis represent the pages of the Reproduced Record.

2. The job description describes the position of Pulmonary Clinical Nurse Specialist as managerial and clinical in nature with no direct patient contact. (234a–236a).

3. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 411.

unable to get hired as a nurse in a hospital in Cincinnati because she suffered from a contagious disease." (F.F. # 8; 245a). The Referee also found that while Claimant's chronic hepatitis is highly contagious, it "is not physically incapacitating." (F.F. # 11; 245a). The Referee further found that Employer had failed to prove that a job was available to the Claimant. (F.F. # 13; 245a). Based on these findings, the Referee concluded that Claimant had suffered a compensable injury under Section 301(c) of the Act, 77 P.S. 411, and awarded compensation for temporary total disability as well as medical expenses.[4] (246a). Employer appealed to the Board which affirmed. This appeal followed.[5]

Employer contends that Claimant failed to give timely notice to Employer within 120 days as required by Section 311 of the Act,[6] and that the Board committed an error when it

4. The Referee also concluded that Claimant had failed to establish that she had an occupational disease under Section 108 of the Act, 77 P.S. § 1208, based on his finding that Claimant failed to introduce evidence that the incidence of hepatitis is substantially greater in the health care industry or nursing profession than in the general population. (F.F. # 12; 245a–246a). While subsection (n) of Section 108 of the Act provides that such a showing must be made for "[a]ll other occupational diseases," subsection (m) specifically provides that "Serum Hepatitis or infectious hepatitis in the occupation of nursing or auxiliary services involving exposure to such disease" is an occupational disease as a matter of law. 77 P.S. § 1208(m) and (n). *See Fruehauf Corporation v. Workmen's Compensation Appeal Board (Cornell)*, 31 Pa.Cmwlth.Ct. 341, 376 A.2d 277 (1977). However, we need not determine whether an error was committed because Claimant has not appealed this conclusion.

5. Our scope of review is limited to a determination of whether constitutional rights have been violated, errors of law have been committed, or whether substantial evidence exists to support the factual findings made. *Cashmark v. Workmen's Compensation Appeal Board (Great A & P Tea Company)*, 135 Pa.Cmwlth.Ct. 464, 580 A.2d 1189 (1990).

6. Section 311 states in relevant part:
   Unless the employer shall have knowledge of the occurrence of the injury, or unless the employe or someone in his behalf, or some of the dependents or someone on their behalf, shall give notice thereof to the employer within twenty-one days after the injury, no compensation shall be due until such notice is given, and, *unless such notice be given within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed....* The term "injury" in this section means, in cases of occupational disease, disability resulting from occupational disease.

held that Employer failed to raise this issue before the Referee. Employer contends that the issue of notice was properly raised in its Answer to the Claimant's Claim Petition. Employer argues that the Claimant's Claim Petition states that she gave notice to the Employer on September 8, 1989, over a year after she testified she had learned of her contraction of the disease. Claimant, however, contends that this entry on the Claim Petition was in error and that substantial evidence exists that she gave Employer timely notice.

■ Our review of the record demonstrates that Employer did raise the issue before the Referee. In Employer's Answer to Claimant's Claim Petition, Employer specifically stated as a defense that "[t]he claim for which the claimant seeks benefits is barred by the failure to give notice within 120 days as required by the Act." (7a). An issue which is asserted in an answer is deemed to be raised. *General Electric Co. v. Workmen's Compensation Appeal Board (Valsamaki)*, 140 Pa.Cmwlth.Ct. 461, 593 A.2d 921 (1991), *petition for allowance of appeal denied*, 529 Pa. 626, 600 A.2d 541 (1991).

■ While the Employer properly raised the issue, the evidence of record demonstrates that Claimant gave the Employer timely notice of her injury. In his Decision, the Referee found that Claimant discovered that she had chronic Hepatitis B in September of 1988 and promptly reported this discovery to her supervisor telling the supervisor that she believed it was related to her employment. (F.F. #'s 4–5; 244a). The Referee also found that on December 27, 1988, less than 120 days after the discovery, Claimant notified the Employer's Vice Director of Human Resources that she had contracted the disease. (F.F. # 6; 244a).

These findings are based on the testimony of the Claimant and are supported by substantial evidence. Claimant testified that she "probably" verbally notified her supervisor, Maria Toff, in September of 1988, "soon after [she] found out the results," which was also in September of 1988. (33a–34a). Claimant further testified that she also verbally informed

77 P.S. § 631. (Emphasis added.)

Janice Yewdell, Vice Director of Employer's Human Resources Department, about her contraction of the disease in October of 1988. (34a). Moreover, the record contains a standardized "Employee Injury Report" dated October 31, 1988, which states that Claimant's "injury" occurred in the Employer's hospital "ICU." (83a). Because the Referee is the sole judge of the credibility and weight of the evidence, we cannot disturb these findings. *Beebe v. Workmen's Compensation Appeal Board (Bendix Corp.)*, 112 Pa.Cmwlth.Ct. 578, 535 A.2d 1236 (1988).

Employer further contends that although the medical evidence accepted by the Referee supports the Claimant's contention that she was infected with Hepatitis B in the course of her employment with Employer, Claimant has failed to establish that the "injury" she suffered prevents her from gaining employment as a nurse in Cincinnati. Employer argues that because the evidence establishes that Claimant was not physically incapacitated, was at all times cleared to work, and that many health care institutions hire professional nurses who are carriers of Hepatitis B, Claimant's failure to secure employment in the year after moving to Cincinnati must be the result of a poor labor market or illegal discrimination on the part of other hospitals for which Employer should not be held responsible.

The Employer does not dispute the fact that Claimant's exposure and subsequent medical treatment are compensable under the Act. The Claimant does not dispute that she can physically perform the duties of a nursing position since no physical limitations have been placed on her ability to work. The only dispute is whether Claimant's lack of ability to find a new job, and subsequent loss of earnings, is due to her condition as a chronic Hepatitis B carrier or whether it is due to the fact that she moved, conducted a narrow search and was not hired for a legitimate reason such as lack of qualifications.[7]

7. Whether rejecting a prospective employee because she is a carrier of Hepatitis B amounts to unlawful discrimination is a matter for the respective federal and state human relations commissions in Ohio. For

■ Claimant, in filing a Claim Petition, bears the initial burden of proving that she suffered an injury which causes a disability, a term which encompasses not only physical disability, but loss of earning power. *Unora v. Glen Alden Coal Company*, 377 Pa. 7, 104 A.2d 104 (1954). Because the Employer does not dispute that Claimant suffered a work-related injury, Claimant has to establish that the work-related disability prevents her from being hired by prospective employers causing a loss of earning power.

Contrary to the findings of the Referee, this is not a case where the Employer bears the burden of proving availability of work. Those situations involve an Employer's petition to modify benefits previously granted as a result of an improvement in the employee's medical condition. *See Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987). This is the first time Claimant has filed for benefits and has yet to initially prove that she is entitled to benefits because a work-related injury caused her loss of earnings.

■ In *Montgomery v. Workmen's Compensation Appeal Board (Colt Industries)*, 42 Pa.Cmwlth.Ct. 143, 145–46, 400 A.2d 253, 254 (1979), we stated that "there can be no disability as a result of an occupational disease until such disability 'manifests itself,' and in turn there can be no manifestation of disability where claimant would be able to continue at his former position." *See also Carpentertown Coal & Coke Co. v. Workmen's Compensation Appeal Board (Mohr)*, 52 Pa. Cmwlth.Ct. 134, 415 A.2d 450 (1980). Because Claimant con-

example, the Pennsylvania Human Relations Act (PHRA), Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. § 955, provides that it is an unlawful discriminatory practice for any employer to refuse to hire or employ an individual because of a "non-job related handicap or disability." 43 P.S. § 955(a). The term "non-job related handicap or disability" is defined as "any handicap or disability which *does not substantially interfere* with the ability to perform the essential functions of the employment the handicapped person applies for." 43 P.S. § 954(p). (Emphasis added.) However, a handicap or disability may be job-related, and thus not subject to the PHRA, if the applicant would "*pose a demonstrable threat to the health and safety of others.*" 16 Pa.Code § 44.4. (Emphasis added.)

tinued to work in the same patient contact position with Employer's hospital after contracting the disease, quitting only upon her voluntary relocation to Cincinnati, a rebuttable presumption must exist that Claimant is not disabled and can perform duties similar to her former position with Employer and can obtain similar employment despite her condition.[8]

The only evidence presented concerning the inability of the Claimant to obtain employment in Cincinnati similar to the work she performed for Employer came from Claimant's own testimony and that of her treating physicians, Martin Black, M.D., and Eugene M. Mayer, M.D.

Dr. Black testified that while chronic Hepatitis B is a contagious disease, the Claimant has no physical manifestations and can only be identified as a carrier by blood samples. (103a). Dr. Black testified that he has not placed any restrictions on the Claimant's activities and believes she is "capable of engaging in full employment." (113a). In response to a question of whether Claimant is disabled from working at any patient contact nursing position due to her condition, Dr. Black stated:

It is *not impossible* for patients who are chronic Hepatitis B carriers to have gainful employment in health care professions. However, this requires that the employer be aware of the specific risks and problems of such employment. Now, since [Claimant] moved to Cincinnati, she has *confided* in me that she's tried to obtain work in Cincinnati and has

---

8. We are also aware of our decision in *Celio v. Workmen's Compensation Appeal Board (Canonsburg General Hospital)*, 109 Pa.Cmwlth.Ct. 442, 531 A.2d 552 (1987), petition for allowance of appeal denied, 518 Pa. 628, 541 A.2d 1139 (1988), where the facts seem somewhat similar but are easily distinguishable. In *Celio*, a nurse's aide contracted tuberculosis at employer's hospital but after making a full recovery, was refused her old job by employer solely because she was a tuberculosis carrier. We held that given the fact that Employer refused to hire her because of her condition, a conclusion may be drawn that claimant is limited to employment specifically suited to her physical condition and therefore the Employer should bear the burden of proving job availability. *Id.*, 109 Pa.Cmwlth.Ct. at 445, 531 A.2d at 554. However, in the present case, Claimant had worked for Employer in her current condition and voluntarily left. Therefore, no such conclusion can be drawn concerning limitations on future employment and the burden remains on the Claimant to prove that her disability caused her loss of earnings.

been rejected by a number of institutions who fear that her Hepatitis B places their institutions at unnecessary risk. (110a–111a). (Emphasis added.) However, Dr. Black's response concerning what Claimant had confided to him about prospective employers elicited an objection from the Employer's counsel on the basis that the statement was double hearsay, which the Referee sustained. (111a; 244a).

Claimant's other treating physician, Dr. Mayer, stated:

From my last contact with [Claimant], her physical status is *normal. She does not appear to be incapacitated.* However, from the fact that she does have a chronic positive carrier state for Hepatitis B, this factor is *a definite detriment* in her ability to obtain employment in any type of capacity involving the care of patients.

(170a). (Emphasis added.) However, on cross-examination, Dr. Mayer acknowledged that his statement that Claimant was under a detriment was based upon what she had told him, not upon some independent knowledge that he possessed. (171a). Moreover, Dr. Mayer, a physician who is affiliated with Employer's hospital medical staff, stated that to his knowledge no policy exists at Employer's hospital against hiring nurses with Hepatitis B. (171a).

Despite her treating physicians' testimony, Claimant testified, that she was told by her treating physician that she should only seek nursing positions with no direct patient contact. The following colloquy took place between the Claimant and her counsel on direct examination:

Q. Have you returned to work since you have moved to Ohio?

A. No, I have not.

Q. And can you tell the Referee why that is?

A. I was *advised* by my physician that *I should not take a job that involves direct patient contact because of the possibility of transmission.*

Q. Have you tried to find employment in a non-patient contact area?

A.  I've *looked* in the newspapers out there *but most of the jobs* for nurses involved some type of patient contact.

(36a).  (Emphasis added.)  On cross-examination, Claimant testified that prior to moving to Cincinnati, she filled out some applications for prospective jobs but did not go to an employment agency.  (48a–49a).

In response to this testimony, Employer introduced into evidence a "Labor Market Survey" (Survey) which Employer commissioned regarding the availability of nursing positions in Cincinnati.  (187a–191a).  The Survey contacted eight major hospitals in the Cincinnati area to determine the hiring policy and interdepartmental procedures in regards to job candidates with chronic active Hepatitis B.  Seven of the eight hospitals stated that no policy exists against hiring of persons with chronic active Hepatitis B to work in direct patient care. (187a–191a).

The Survey also indicated that each hospital has a slightly different policy and deals with each such employee on a case by case basis depending on the employee's current blood serum levels.  As to particular job classification, the hospitals tend to keep active hepatitis carriers out of high-risk areas, the O/R, dialysis unit and OB/GYN areas, and place them in all other areas of the hospital which are classified as low-risk. The Survey also indicated that the hospitals provide education to employees regarding the contraction of the disease.  (187a–191a).

■ The evidence establishes that Claimant has not met her burden of proving that she cannot obtain similar employment because of her condition.  Claimant is not physically disabled from performing the duties of a nurse and has no physical limitations placed on her by her physicians.  Claimant has not offered any demonstrative evidence that her condition prevented her from obtaining similar employment in Cincinnati.  Moreover, the physicians' testimony regarding her inability to obtain employment was not expert opinion but merely a recitation of what Claimant had told them herself.

Accordingly, we will reverse the Order of the Board as to the grant of temporary total disability benefits for the time period of July 17, 1989, through July 21, 1990. We will affirm the Board's Order as to medical expenses and in all other aspects.

## ORDER

AND NOW, this 18th day of September, 1992, the Order of the Pennsylvania Workmen's Compensation Appeal Board dated December 9, 1991, is reversed in part as to the award of temporary total disability benefits, and affirmed as to all remaining issues.