**James CAMPBELL, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (FOAMEX and National Union Fire Insurance Company c/o Crawford and Company), Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Jan. 9, 1998.
Decided Feb. 25, 1998.

Joseph B. Steele, Erie, for petitioner.

John W. McCandless, Erie, for respondents.

Before PELLEGRINI and FRIEDMAN, JJ., and JIULIANTE, Senior Judge.

PELLEGRINI, Judge.

James Campbell (Claimant) appeals an order of the Workers' Compensation Appeal Board (Board) reversing the decision of the Workers' Compensation Judge (WCJ) and denying his petition to reinstate his workers' compensation benefits.

The facts of this case are not in dispute. Claimant suffered a low-back injury on September 30, 1991, while employed by Foamex Products, Inc. (Employer) located in Corry, Pennsylvania. Employer acknowledged the injury by Notice of Compensation Payable. Claimant returned to work on March 16, 1992, at his regular wages and benefits were suspended by Supplemental Agreement. Two days later, Claimant's disability recurred and temporary total disability benefits were reinstated. Apparently because Employer had no jobs available for Claimant within his physical limitations, Employer engaged in a job search for Claimant. Employer found a limited duty, part-time job for Claimant at Wackenhut Security (Wackenhut) in Erie, Pennsylvania.

Because Claimant lived in Corry, Pennsylvania, he had to drive 70 miles roundtrip to work at Wackenhut. Soon after Claimant began that job, he and his wife divorced and his wife took possession of their only car. Because Claimant had no transportation to get to work, he quit his job at Wackenhut with his last day of work being August 7, 1995. Claimant then filed a petition for reinstatement of temporary total disability benefits alleging that he could no longer be employed at Wackenhut through no fault of his own. Employer filed an answer denying that allegation and, instead, argued that Claimant was not entitled to reinstatement of his benefits because he quit his job due to lack of transportation which was unrelated to his disability. At the hearing, the parties stipulated that the only issue was whether Claimant's loss of earnings resulted through no fault of his own in order to reinstate his benefits under Section 413 of the Workers' Compensation Act (Act).[1]

The WCJ found that Claimant did not voluntarily quit his job at Wackenhut and through no fault of his own he was again totally disabled as a result of his September 30, 1991 work injury. The WCJ reasoned that because Claimant's wife received the family vehicle upon their divorce, his loss of transportation made the job in Erie unavailable to him. On appeal, the Board reversed determining that Claimant's termination from his employment, whether voluntary or not, was for reasons unrelated to his work injury and his loss of earnings was not attributable to his work-related injury. This appeal by Claimant followed.[2]

The sole issue before this court is whether a claimant, who continues to be disabled, is entitled to reinstatement of benefits when he quits suitable alternative employment because his sole source of transportation is no longer available and the work is too far from his residence to allow him to utilize public transportation.

Claimant argues that the issue should be resolved not on whether his loss of earning power is due to his disability, but on whether his loss of earning power is due to lack of transportation. To support this contention, he cites *DME Company v. Workmen's Compensation Appeal Board (Peters)*, 162 Pa. Cmwlth. 418, 639 A.2d 869 (1994), where a claimant with residual disability but able to return to work was awarded benefits because a job offered to him was not "available" because he lacked adequate transportation to get there. In effect, Claimant is arguing that the same standard for job availability set forth in *Kachinski v. Workmen's Compensation Appeal Board (Vepco Construction Co.)*, 516 Pa. 240, 532 A.2d 374 (1987),[3]

1. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 772. Section 413 of the Act provides in relevant part:

    [W]here compensation has been suspended because the employe's earnings are equal to or in excess of his wages prior to the injury that payments under the agreement or award may be resumed at any time during the period for which compensation for partial disability is payable, unless it be shown that the loss in earnings does not result from the disability due to the injury.

2. Our scope of review is limited to determining whether constitutional rights were violated, an error of law committed, or whether necessary findings of fact were supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

3. In *Kachinski*, our Supreme Court held that when an employer wants to modify a claimant's benefits, it must show that the claimant's condition has changed, it has provided referral(s) to a then-open job(s) that fits claimant's limitations and that claimant has not in good faith followed

should be used to determine whether reinstatement of benefits is appropriate after the job has been secured.[4]

However, in several cases involving that same question, our Supreme Court and this court have determined otherwise. In *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 535 Pa. 135, 634 A.2d 592 (1993), claimant filed a claim petition alleging an injury and entitlement to total disability from her original employer even after she returned to full-time modified work with another employer without a loss of earning power but with some residual disability. She voluntarily quit that job and filed for reinstatement of total disability benefits alleging that she was entitled to benefits because her original employer did not prove work was available to her within her limitations. The Court explained that the employer did not have to prove work availability under *Kachinski* because claimant's loss of earning power was not related to her disability:

> In light of his findings that the claimant had engaged in full time employment for six months without pain, and had quit without good cause, the referee was entitled to conclude that the claimant's loss of earning power after she left this employment was caused not by her injury but by her voluntary decision to abandon the employment. Since the burden of proof was on the claimant at this point, the Commonwealth Court erred in suggesting that the employer had failed to meet its burden of showing availability of employment pursuant to *Kachinski*.

*Id.*, 535 Pa. at 142, 634 A.2d at 596.

While in *Inglis House* claimant voluntarily quit her suitable alternative employment, it has also been held that once a claimant has suitable alternative employment, any loss of earning power not related to the work-related injury does not justify reinstatement of total disability benefits.

In *Miller v. Workmen's Compensation Appeal Board (Allied Aviation Services of PA)*, 156 Pa.Cmwlth. 235, 627 A.2d 824 (1993), petition for allowance of appeal denied, 538 Pa. 617, 645 A.2d 1320 (1994), claimant suffered a work-related injury and returned to work at her previous job. She left that employment to begin a job with K–Mart Corporation. After a recurrence of her disability when she received total disability benefits from her original employer, benefits were suspended when she returned to K–Mart without a loss of wages but with residual disability. She subsequently left K–Mart and took a job with Giuseppe Ristorante to earn higher wages. She worked at that job for approximately ten months after which time she quit her job because she felt her safety was threatened by the actions of her superior. Because she quit for reasons unrelated to work injury and she did not contend that she quit her job due to any physical disability, we held that she was not entitled to reinstatement of benefits because her loss of earnings was not related to her disability.

More recently, in *Harle v. Workmen's Compensation Appeal Board (Telegraph Press, Inc.)*, 540 Pa. 482, 658 A.2d 766 (1995), our Supreme Court determined that when a claimant with a residual disability returned to work with a different employer without any loss in earning power and subsequently lost that job due to the business closing, even though the employer where claimant was injured did not prove job availability under *Kachinski*, claimant was not entitled to reinstatement of total disability benefits because the loss of earning power was unrelated to the disability.

---

through on the referrals. Additionally, a job may be found to be available when claimant can perform it with regard to physical restrictions, age, intellectual capacity, education, prior work experience, and other relevant considerations such as place of residence.

**4.** Claimant also cites *Dillon v. Workmen's Compensation Appeal Board (Greenwich Collieries)*, 536 Pa. 490, 640 A.2d 386 (1994), for the proposition that a claimant is entitled to reinstatement

of total disability benefits when work within his physical limitations is not available. However, in that case, our Supreme Court held that in order for a claimant who has been working at a modified job with a wage loss to have benefits reinstated, he must show that his disability continues and through no fault of his own his earning power is adversely affected *by his disability*. Because Claimant is not arguing that his disability has affected his earning power, *Dillon* does not support Claimant's argument.

Citing to Section 306(b) of the Act [5] which governs benefits for partial disability, the Court noted, "an employee whose earning power is no longer affected by his work-related injury is no longer entitled to partial disability benefits, even though his earnings may not match his pre-injury earnings." *Id.,* 540 Pa. at 488, 658 A.2d at 769. In reaching that holding, it relied on Section 306(b) of the Act which provides:

> The term "earning power," as used in this section, shall in no case be less than the weekly amount which the employe receives after the injury, and in those cases in which the employe works fewer than five days per week for reasons not connected with or arising out of the disability resulting from the injury shall not be less than five times his actual daily wage ...

Our Supreme Court further explained, "Thus if a worker is able to secure employment that, not because of limitations caused by the injury but for other reasons, is only part-time, his 'earning power' is calculated as though he were employed full-time." *Id.,* 540 Pa. at 488, 658 A.2d at 769.[6]

▮ Once it is shown that a loss of earning power has nothing to do with a claimant's work-related injury, reinstatement of total disability benefits is not proper and the employer is under no obligation to provide suitable alternative employment. In this case, the parties stipulated that Claimant quit his job because he lacked transportation, not because of any reason related to his disability. Like the claimants in *Inglis House, Miller* and *Harle* who could no longer work due to outside factors and it was determined that their loss of earning power was not related to their disability thereby disqualifying them from receiving benefits, Claimant's quitting his job due to lack of transportation did not justify the reinstate-

ment of his benefits because his loss of earning power was unrelated to his disability.

Accordingly, the decision of the Board is affirmed.

### ORDER

AND NOW, this 25th day of February, 1998, the order of the Workers' Compensation Appeal Board, dated July 24, 1997, No. A96–0730, is affirmed.

FRIEDMAN, Judge, dissenting.

To establish the right to reinstatement of workers' compensation benefits following a suspension of those benefits, a claimant must demonstrate: (1) that *through no fault of his own* his earning power is once again adversely affected *by his disability;* and (2) that the disability which gave rise to his original claim continues. *Pieper v. Ametek–Thermox Instruments Div.,* 526 Pa. 25, 584 A.2d 301 (1990). Here, the majority concludes that the Workers' Compensation Appeal Board (Board) properly denied James Campbell's (Claimant) reinstatement petition because, like the claimants in *Inglis House v. Workmen's Compensation Appeal Board (Reedy),* 535 Pa. 135, 634 A.2d 592 (1993), *Miller v. Workmen's Compensation Appeal Board (Allied Aviation Services of PA),* 156 Pa. Cmwlth. 235, 627 A.2d 824 (1993), *appeal denied,* 538 Pa. 617, 645 A.2d 1320 (1994), and *Harle v. Workmen's Compensation Appeal Board (Telegraph Press, Inc.),* 540 Pa. 482, 658 A.2d 766 (1995), Claimant's loss of earnings was unrelated to his disability. Unlike the majority, I believe that Claimant's situation is distinguishable from that of the claimants in those cases, and I would conclude that Claimant has satisfied his burden here; thus, I respectfully dissent.

The majority correctly states that "[t]he sole issue before this court is whether a

---

5. 77 P.S. § 512.

6. The requirement that the loss of earning power be related to the disability and that unrelated medical conditions do not justify reinstatement of total disability benefits was discussed in *USX Corp. v. Workmen's Compensation Appeal Board (Hems),* 167 Pa.Cmwlth. 19, 647 A.2d 605 (1994). In that case, claimant injured his thumb and had some residual disability but was capable of re-

turning to his regular job. Prior to doing so, he suffered a non work-related brain abscess preventing him from returning to work. We held that his employer did not have to show work availability because the loss of earning power was not related to the work injury. *See also Columbo v. Workmen's Compensation Appeal Board (Hofmann Industries, Inc.),* 162 Pa. Cmwlth. 307, 638 A.2d 477 (1994).

claimant, who continues to be disabled, is entitled to reinstatement of benefits when he quits suitable alternative employment because his sole source of transportation is no longer available and the work is too far from his residence to allow him to utilize public transportation." (Majority op. at 1189.) Although the phrasing differs, the workers' compensation judge (WCJ) considered this precise issue, which, as stipulated to by the parties, was to determine whether Claimant's loss of earnings resulted through no fault of his own. Having determined that Claimant did not quit his job at Wackenhut Security (Wackenhut) voluntarily, but was forced to leave because of a lack of transportation,[1] the WCJ properly recognized that Claimant was again totally disabled by the physical limitations resulting from his work injury and, thus, was entitled to a reinstatement of his benefits under section 413 of the Workers' Compensation Act (Act).[2] On appeal, the Board reversed the WCJ without addressing the issue agreed upon by the parties. Instead, the Board determined that, whether or not Claimant's termination from his employment was voluntary, because Claimant left his job at Wackenhut for reasons unrelated to his work-related injury, the resulting loss of earnings likewise was not attributable to that work injury. The majority here accepts the Board's analysis; however, given the issue before this court, I believe that the WCJ's analysis was correct, and I do not agree that *Inglis House, Miller* or *Harle* dictate to the contrary.

We must determine whether a claimant suffering from residual work-related medical impairment is entitled to reinstatement of total disability benefits when the employment which gave rise to a suspension of those benefits ends. This requires a simple two-pronged test.

(1) The reason for the termination of employment must be established.

- If the claimant was forced to leave the employment for reasons directly related to his or her work-related medical im-

pairment, the claimant is entitled to reinstatement of total disability benefits.

- If the claimant was dismissed from suitable, available work for cause, or if the claimant voluntarily abandoned such work, the claimant is not entitled to reinstatement of total disability benefits because the claimant will have failed to establish that the loss of earnings was through no fault of his or her own.

- If the claimant was forced to leave such work through no fault of his or her own (involuntarily), even where the reason for that departure is unrelated to the claimant's residual medical problems, then

(2) Whether the claimant is capable of returning to his or her pre-injury work without restrictions must be determined.

- If the claimant is able to return to such work despite any continuing work-related medical impairment, reinstatement of total disability benefits is unjustified, and the employer is entitled to a continued suspension of such benefits even absent a showing of job availability.

- If the claimant is unable to return to such work because of physical limitations stemming from the claimant's work-related injury, then the claimant is entitled to reinstatement of total disability benefits unless there is a showing of job availability.

Applying this test, I would conclude that Claimant's reinstatement petition should be granted because, unlike the claimants in *Inglis House* and *Miller*, the WCJ found that Claimant did not leave his job at Wackenhut voluntarily, and, unlike the claimant in *Harle*, Claimant was unable to return to his pre-injury work because of limitations imposed by his work-related injury. An analysis of these cases illustrates my point.

*Inglis House* is easily distinguished from the present case because, as the majority readily admits, the claimant in *Inglis House*

---

1. Claimant and his wife divorced, and, pursuant to a court order, Claimant's wife received the couple's only car.

2. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 772. Under Pennsylvania law, "disability," for purposes of the Act, has long been considered synonymous with loss of earning power. *Harle.*

*voluntarily* quit *available,* alternative employment.[3] Thus, in that case, the claimant could not prevail because she failed to show that her earning power was adversely affected by her disability *through no fault of her own.* In contrast to the situation in *Inglis House,* the WCJ here found that Claimant *did not leave Wackenhut voluntarily;* rather, he was forced to leave by circumstances which were *not his fault* and which made that job *unavailable* to him.

In *Miller,* the claimant suffered a work-related injury and received benefits from her employer until she was able to return to her pre-injury job. The claimant subsequently left that employment to take a position with K–Mart Corporation (K–Mart). After a recurrence of her disability, during which she received total disability benefits from her original employer, the claimant's benefits were suspended when she returned to K–Mart without a loss of wages but with residual physical impairment. The claimant then left K–Mart to take a position with Giuseppe

Ristorante for higher wages; however, she quit that job because she feared for her safety. After securing other employment, the claimant filed a reinstatement petition seeking total disability benefits for the period of unemployment after she left her job with Giuseppe Ristorante until she began her new job.

The referee denied the claimant's reinstatement petition, concluding that her loss of earnings was due to her voluntary quit for reasons unrelated to her injury. In finding that the claimant voluntarily quit suitable, available work, the referee specifically considered that, while the claimant may have sustained a loss of earnings after leaving the job at Giuseppe Ristorante, that loss of earnings really stemmed her voluntarily quitting her job at K–Mart.[4] Thus, as in *Inglis House, Miller* involved a *voluntary* quit of an *available* job, rather than a situation, as here, where Claimant left his job *involuntarily* when it became *unavailable.*[5]

---

**3.** In *Inglis House,* the claimant, who worked as a nursing assistant, filed a claim petition alleging a January 3, 1987 work-related back injury and entitlement to total disability benefits based on that injury. While her claim petition was still pending, the claimant found alternative employment in a modified position from October 17, 1988 until March 11, 1989. When the referee finally issued his decision on the claim petition, in June of 1989, the claimant was awarded total disability benefits from January 3, 1987, the date of the injury, through October 16, 1987. The claimant received partial benefits thereafter, reflecting the reduction of claimant's total benefits by the earnings from her alternative job. Although that alternative employment had ended on March 11, 1989, the referee concluded that the claimant was not entitled to a resumption of total disability benefits on that date. The referee based that decision on findings that the claimant was physically able to perform work that, obviously, was *available* to her, but that she had *voluntarily abandoned* that employment. The Board reversed and this court affirmed; however, our supreme court reinstated the referee's decision.

**4.** With regard to the position at K–Mart, the referee found that the claimant never terminated or was laid off from that position due to her work-related injury, evidence which "established that there was suitable work available to and within her reach which she was capable of obtaining." *Miller,* 627 A.2d at 825 n. 2, quoting the referee's findings of fact.

On appeal to this court, the claimant argued that she was entitled to a reinstatement of benefits because she left her employment with Giuseppe Ristorante for necessitous and compelling reasons, so that her loss of earnings was not her fault. However, the claimant's argument was misdirected because it is apparent that the referee did not base his decision to deny a reinstatement of total disability benefits on a finding that the claimant voluntarily left the job at Giuseppe Ristorante. To the contrary, the denial of the claimant's reinstatement petition was based on the fact that she voluntary quit her K–Mart job. Although the referee found that the claimant quit her job at Giuseppe Ristorante for reasons unrelated to her injury, he never determined whether the claimant left that position voluntarily, *see Miller,* 627 A.2d at 825 n. 2; it was because the claimant voluntarily quit an available position with K–Mart that her later loss of earnings, when she left Giuseppe Ristorante, was deemed unrelated to her disability.

**5.** Further, I note that, in affirming the denial of the claimant's reinstatement petition in *Miller,* we point out that the claimant never contended that she was physically unable to perform any of her previous jobs. Indeed, we likened the claimant in *Miller* to the claimant in *Frankford Hospital v. Workmen's Compensation Appeal Board (Burns),* 150 Pa.Cmwlth. 532, 616 A.2d 79 (1992), who continued to work for her employer after contracting Hepatitis B and suffered a loss of earnings only when she voluntarily quit to relocate. In *Frankford,* we held that there was a rebuttable presumption that the claimant could

*Harle* involved a situation where a claimant who worked as a pressman sustained a work-related injury. Subsequently, despite residual medical problems, *he was released to return to duty with no restrictions;* however, the employer went out of business, and the claimant was laid off before he was able to return to work. Shortly thereafter, on his own initiative, the claimant found a job as a pressman at wages lower than his time-of-injury wage. The employer filed a termination petition, which the WCJ granted and the Board affirmed.

However, this court reversed, reasoning that the claimant was entitled to partial disability benefits because he had a demonstrable continuing medical disability warranting suspension, and because the employer had failed to establish that appropriate work was available. The supreme court affirmed our holding that *where a claimant can return to work without restriction,* but with a continuing medical disability, a suspension, rather than a termination, is proper. However, the supreme court reversed this court with regard to the claimant's entitlement to partial

disability benefits. The court concluded that by obtaining work in his pre-injury occupation as a pressman, albeit at a lower wage, the claimant had obviated the employer's need to produce evidence of job availability and had established that the discrepancy in wages, that is, his loss of earnings, was due to his layoff and not his work-related injury.

Clearly then, *Harle* is also distinguishable from the situation presented here. In *Harle,* the claimant had a residual medical disability but was *able to return to his pre-injury work without restriction,*[6] albeit with a different employer at lower pay. Under these circumstances, our supreme court determined that the reason for the loss of earnings was unrelated to any work-related disability; however, the circumstances here are very different. There is no dispute that *Claimant was unable to perform his time-of-injury job;* in fact, it was because Employer had no jobs available for Claimant within his physical restrictions that Claimant was placed in the part-time, limited duty position at Wackenhut, a company located 70 miles roundtrip from Claimant's home.[7]

---

perform jobs similar to her prior job and her loss of earnings resulted only from her voluntarily choosing to quit her job. Referring to this holding, we said that the claimant in *Miller* was subject to a similar rebuttable presumption because, despite a residual physical disability, she too had returned to her former job and had moved on to other jobs before voluntarily quitting, and there was no reason to believe that she could not have again returned to her pre-injury job.

In contrast, Claimant here did not voluntarily choose to quit his job at Wackenhut; rather, he was unable to continue when the position was rendered unavailable to him because of the lack of both private and public transportation to get to a job in that location. Moreover, far from being subject to the presumption that he could return to his pre-injury work, there is no dispute that Claimant's physical limitations precluded him from performing his prior job with Employer.

**6.** Similarly, in *USX Corp. v. Workmen's Compensation Appeal Board (Hems),* 167 Pa.Cmwlth. 19, 647 A.2d 605 (1994), and *Columbo v. Workmen's Compensation Appeal Board (Hofmann Industries, Inc.),* 162 Pa.Cmwlth. 307, 638 A.2d 477 (1994), both of which are cited by the majority to support its decision, we held that the employer was entitled to a suspension of benefits without having to prove work availability where, following the work injury, *the claimant was capable of returning to his regular job* despite some medical

residuals, but a non-work-related medical condition prevented him from doing so. In those cases, because the claimant could have returned to his pre-injury job *but for* the unrelated medical condition, we held that the loss of earning power was due solely to the unrelated medical condition, and, thus, the employer was entitled to suspension even without a showing of job availability. However, I note that, like the claimant in *Harle,* the claimants in *USX* and *Columbo* could have returned to their pre-injury work but for the non-work-related condition or circumstance. That is not the case here. It is not the unrelated circumstance, that is, the lack of transportation, which prevents Claimant from returning to his time-of-injury position; rather, it is because Claimant's work-related physical limitations prevent him from performing such work. Indeed, it was only the need for light duty work to accommodate his work-related disability that put Claimant in the position of working so far from home in the first place.

**7.** That the rationale in *Harle* depends upon the ability of the claimant to return to or obtain employment in his pre-injury position is made apparent in *Trumbull v. Workmen's Compensation Appeal Board (Helen Mining Co.),* 683 A.2d 342 (Pa.Cmwlth.1996). In *Trumbull,* we relied on *Harle* for the proposition that an employer is entitled to a continuing suspension without demonstrating job availability where the claimant *was able to return to his pre-injury job* with resid-

Finally, I believe that the majority gives short shrift to *Dillon v. Workmen's Compensation Appeal Board (Greenwich Collieries)*, 536 Pa. 490, 640 A.2d 386 (1994), by stating simply that "[b]ecause Claimant is not arguing that his disability has affected his earning power, *Dillon* does not support Claimant's argument." (Majority op. at 1190 n. 4.) I must disagree with this undeserved dismissal of *Dillon.*

In *Dillon*, the claimant argued that he was entitled to reinstatement of total disability because he was unable to obtain any work within the physical restrictions caused by his work-related injury. Our supreme court agreed and concluded that, because the findings that the claimant was able to perform sedentary work but that no work of this type was available to him were supported by substantial evidence, the claimant was entitled to an award of compensation for total disability. Similarly, Claimant here argues that he is entitled to reinstatement of total disability because, as a result of his transportation problems, there is no longer any work available to him within the physical restrictions imposed by his work-related injury. As in *Dillon,* the record here provides substantial evidence to support the WCJ's findings that Claimant was again totally disabled as a result of his work injury when his limited duty job was rendered unavailable to him through no fault of his own. Therefore, I believe that *Dillon* fully supports Claimant's argument and that the majority here has miscast Claimant's argument in an attempt to avoid *Dillon*'s impact.

In sum, although Claimant may have left his job at Wackenhut for reasons that were unrelated to his work injury; that alone is not determinative of his entitlement to a reinstatement of total disability benefits. Here, the WCJ properly found that Claimant did not voluntarily quit his job but was forced to leave through no fault of his own. In addition, it has been established that Claimant is unable to resume his pre-injury work due to his work-related disability, so that Claimant's resulting loss of earning pow-

er is once again adversely affected by and attributable to that continuing disability. Thus, because Claimant has satisfied his burden under *Pieper* and demonstrated that he is entitled to a reinstatement of his total disability benefits, I would reverse the Board and reinstate the WCJ's decision.

ual medical impairment but suffered a loss of earnings when he was laid off from that position. However, we stressed that an employer must still establish job availability if the claimant first es-

tablishes that his *work-related injury prevents him from returning to his pre-injury position without restrictions.* *Trumbull.* That is the situation in this case.