**PAPPANS FAMILY RESTAURANT,**
Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD (GANOE),**
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 4, 1998.
Decided May 12, 1999.

Michael D. Sherman, Pittsburgh, for petitioner.

Alexander J. Pentecost and Amiel B. Caramanna, Pittsburgh, for respondent.

Before DOYLE, J., KELLEY, J., and RODGERS, Senior Judge.

DOYLE, Judge.

Pappans Family Restaurant (Employer) appeals from an order of the Workers' Compensation Appeal Board (Board) affirming an order of a Workers' Compensation Judge (WCJ) which had granted the reinstatement petition of James Ganoe (Claimant).

Claimant began working for Employer in 1978 as a heating, ventilation and air-conditioning mechanic. In this capacity, Claimant worked approximately 53 hours per week. On September 24, 1990, he was injured by a falling condensing unit which struck him on the left foot and also frac-

tured the tibia [1] in his left leg. Employer executed a notice of compensation payable entitling Claimant to weekly total disability benefits of $419.00 per week based upon an average weekly wage of $704.96.

Claimant returned to work on January 14, 1991, at wages greater than or equal to his pre-injury wages and executed a supplemental agreement acknowledging this fact.

On April 23, 1991, Claimant's physician placed a work restriction on Claimant's work, limiting him to 40 hours per week. As a result, Claimant executed a second supplemental agreement which awarded him partial disability benefits of $149.98 per week for an undetermined time period. Claimant continued to work in this capacity until May 27, 1992, when Employer laid him off.

On June 7, 1992, Claimant began work as a heating, ventilation and air-conditioning technician with J.E. Fugh Mechanical Services (Fugh). When Claimant started, he informed Fugh of his work injury, as well as the fact that he could only work 40 hours per week and could not lift more than 50 pounds. As a condition of employment, Claimant was to provide his own tools, which had an aggregate weight of approximately 1500 pounds, and Fugh was to provide Claimant with a company truck. Claimant's place of employment was 38 miles from his home, and he had no transportation of his own.

Claimant performed the technician position with Fugh until October 24, 1993. On that date, Fugh informed Claimant that a major supplier had requested a different technician to work in their facilities and that Claimant would be demoted to part-time work with Fugh. As a consequence, Claimant would no longer be permitted to use Fugh's truck as transportation to and from work; rather, Fugh required Claim-

ant to travel 38 miles from his home to pick up the truck, drive the truck back to Claimant's home and load his equipment into the truck and then go to his designated work site because Claimant did not have private transportation. In the evening the process would proceed in reverse. Claimant, of course, could not work this way because of time constraints, as well as the fact that some of his tools weighed over 50 pounds, and, as a result, Fugh discharged him in December of 1993. [2]

Claimant subsequently secured employment as a heating, ventilation and air-conditioning mechanic with Climatech on June 20, 1994. At Climatech, Claimant received hourly wages equal to or greater than his hourly pre-injury wages with Employer, but he could only work 40 hours a week due to his medical restrictions, as opposed to the 53 hours he worked with Employer and, thus, he suffered a loss of wages and was therefore partially disabled. The record does not indicate whether or not Claimant continues to work for Climatech, but, as of the date of the WCJ's decision, he was still employed there. At some point between the time that Claimant was discharged from Fugh and the time he began working for Climatech, Employer unilaterally ceased paying Claimant weekly benefits.

On February 24, 1994, Claimant filed a reinstatement petition, alleging, inter alia, that he was put on part-time work by Fugh on October 27, 1993, and was terminated on December 13, 1993, through no fault of his own. Employer filed a timely answer denying the allegations contained in the petition, and hearings were scheduled before a WCJ.

At the hearings, Claimant testified to the above events. In addition, he presented the deposition testimony of Dr. Larry M. Newman, his treating physician. Dr. Newman testified that he had treated

---

1. The tibia is the larger of the two bones in the lower leg and is commonly referred to as the shin bone.

2. Claimant received unemployment compensation benefits during the period between his discharge from Fugh and his subsequent employment with Climatech.

Claimant since August 3, 1992. Based upon his examinations of Claimant during that time, Dr. Newman opined that Claimant suffered from post-traumatic arthritis in his left ankle. Specifically, Dr. Newman noted that the muscles in Claimant's left foot continually go into constant contraction and, in response, other muscles become weakened by over use. Dr. Newman noted that, although, at the time of his deposition, Claimant was not a candidate for surgical intervention, Dr. Newman did attempt to treat the condition through injections, physical therapy and the use of an orthopedic prosthesis.

Based on his treatment of the Claimant, Dr. Newman opined that Claimant could not perform his time of injury job, but could perform a full-time position that was classified as medium heavy. Dr. Newman stressed, however, that whatever work Claimant would be engaged in, he could not exceed 40 hours per week.

In opposition to the reinstatement petition, Employer presented the testimony of J. Elwood Fugh and his service manager, Robert Barton. Mr. Fugh testified that, at the time that he hired Claimant, he was not aware of any physical restrictions that Claimant had. In addition, Mr. Fugh stated that the reason that Claimant was demoted from full time to part time was because of some complaints that one of his clients made concerning Claimant's work on their equipment. Mr. Fugh further stated that the reason that Claimant was ultimately terminated was his inability to report for work, but he did acknowledge that, when Claimant was demoted to part-time status, Claimant lost the use of a company vehicle. Mr. Barton stated that Claimant had no attendance problems prior to losing the use of the company vehicle. After Fugh removed the full use of the truck, according to Mr. Barton, Claimant did not report for work, although work was available for him. According to Mr. Barton, Claimant indicated that the reason he would not report for work was because he did not have use of the company vehicle

and could not, therefore, report with the necessary tools. Mr. Barton testified that he believed that Fugh would be responsible for supplying the heavier equipment to its employees and that Claimant would only need to provide lighter equipment such as gauges, wrenches and screwdrivers. Mr. Barton conceded, however, that he did not participate in Claimant's hiring; nor was he aware of the terms of Claimant's employment, i.e., what tools that Claimant was responsible for providing.

In addition, Employer presented the deposition testimony of Dr. Jon Levy who performed an independent medical evaluation of Claimant on June 27, 1994. Like Dr. Newman, Dr. Levy concluded that Claimant suffered from post-traumatic arthritis that was related to his September 24, 1990 injury. He also opined that surgery was not yet necessary, and that Claimant's work should be limited to no more than 40 hours per week.

On August 6, 1996, the WCJ circulated his opinion and order which granted Claimant's reinstatement petition and awarded Claimant partial disability benefits for the period from April 23, 1991, the date Claimant returned to work with Employer with medical restrictions, and continuing. The WCJ acknowledged that Employer would be entitled to deduct from the total amount owed to Claimant any partial disability benefits that it had already paid to the Claimant. In reaching his decision, the WCJ found the testimony of Claimant and Doctors Newman and Levy to be credible and found the testimony of Mr. Barton and Mr. Fugh to be credible to the extent that their testimony did not contradict that of the Claimant. In addition, the WCJ did not award Employer a credit against Claimant's unemployment benefits because Employer did not ask for such a credit. The basis for the WCJ's overall conclusion that Claimant was entitled to a reinstatement was that Claimant did not engage in any conduct which justified his termination from Fugh.

Employer appealed the issue of Claimant's entitlement to benefits and its entitlement to a credit against Claimant's unemployment benefits to the Board which affirmed the WCJ's decision in its entirety. This appeal followed.

On appeal,[3] Employer argues that the WCJ erred in granting Claimant's reinstatement petition because Claimant did not establish that his disability was related to his injury.

It should be noted that there are two different "periods" of disability in the present case. The first group is during the time when Claimant was working 40 hours a week for Employer and, subsequently, for Fugh and Climatech. During these times, Claimant experienced partial disability because he could work no more than 40 hours per week, based on his doctor's restrictions, which was less than he regularly worked for Employer before his injury and which qualified Claimant for partial disability benefits. It appears to us that Employer does not dispute that Claimant is entitled to partial disability benefits during this time. The second "period," however, is at issue. It is the time from when Claimant was terminated by Fugh to the time he was hired by Climatech, the period during which he had no wages at all.

■ Our first inquiry is to determine what the proper burden of proof is and who bears that burden. Normally, a claimant seeking reinstatement of his benefits bears the burden of establishing (1) that through no fault of his own, his earning power has again been affected by a work-related injury and (2) that the disability which gave rise to his original claim continues. *Pieper v. Ametek–Thermox In-struments Division*, 526 Pa. 25, 584 A.2d 301 (1990). That analysis, which places the initial burden on the claimant, however, applies to a claimant who is seeking to have his benefits reinstated following a *suspension*. A suspension of benefits is a suspension of an employer's obligation to pay benefits because, although the claimant may still suffer from a medical disability, there is currently no loss of earnings, *i.e.*, no disability for purposes of the Act, attributable to the work-related injury. *Pieper.*

In the present case, there had never been a suspension, either by a supplemental agreement, order or otherwise.

■ It is well settled, of course, that, once established, disability is presumed to continue until proven otherwise. *Battiste v. Workmen's Compensation Appeal Board (Fox Chase Cancer Center)*, 660 A.2d 253 (Pa.Cmwlth.1995). In this case, Employer has not established by affirmative proof that, during any relevant period, it was entitled to cease paying benefits or that Claimant's disability had ended; indeed, the record is clear that during all relevant times, Claimant remained under the restriction that he could only work 40 hours per week and not lift more than 50 pounds. Accordingly, the *Pieper* analysis is not specifically applicable here.[4]

■ Because Claimant's disability is presumed to continue, it was the Employer who had the burden to establish either: (1) that there was work available within the claimant's restrictions; or (2) that the claimant's disability was caused by something other than his work-related injury. *Teledyne McKay v. Workmen's Compensation Appeal Board (Osmolinski)*, 688 A.2d 259 (Pa.Cmwlth.1997).

---

3. Our standard of review is limited to determining whether necessary findings of fact are supported by substantial evidence, whether constitutional rights were violated, or whether an error of law was committed. *Morey v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.)*, 684 A.2d 673 (Pa.Cmwlth. 1996).

4. Likewise, the allocation of the burden of proof to receive a reinstatement of benefits following a termination of benefits which was also outlined in *Pieper* is also inapplicable because Claimant's benefits were never terminated by a supplemental agreement or otherwise.

In the present case, Employer presented no evidence of available jobs during the period from December of 1993 to June 24, 1994. Therefore, our sole inquiry is whether Employer established that Claimant's disability was due to factors other than his work-related injury.

In support of a reversal, Employer asserts that, under our Supreme Court's decision in *Hertz–Penske Truck Leasing Co. v. Workmen's Compensation Appeal Board (Bowers)*, 546 Pa. 257, 684 A.2d 547 (1996), any consideration of a claimant's "fault" in workers' compensation proceedings is inappropriate. We do not agree with Employer's characterization of the holding of *Hertz–Penske.* Whatever term is assigned to it, consideration of a claimant's acts or omissions as they relate to his continuing eligibility for benefits, is a well-established principle of workers' compensation. *See Banic v. Workmen's Compensation Appeal Board (Trans–Bridge Lines, Inc.)*, 550 Pa. 276, 705 A.2d 432 (1997) (A claimant who becomes incarcerated is ineligible for benefits); *Republic Steel Corporation v. Workmen's Compensation Appeal Board (Petrisek)*, 537 Pa. 32, 640 A.2d 1266 (1994) (A claimant is ineligible for benefits when he voluntarily removes himself from the workforce); *Johnson v. Workmen's Compensation Appeal Board (McCarter Transit, Inc.)*, 168 Pa.Cmwlth. 439, 650 A.2d 1178 (1994) (A claimant's failure to pursue available jobs in good faith prevents receipt of benefits). Accordingly, although certainly not synonymous with the willful misconduct standard utilized in an unemployment compensation case, a claimant's conduct is a factor in workers' compensation cases.

The parties agree that Claimant was discharged from Fugh for "business reasons"; however, each party interprets the effect of that termination differently. We would note at the outset, however, that if Claimant had been laid off for lack of work, that also would constitute a "business reason," but there would be no doubt that Claimant would be entitled to a reinstatement of his benefits. *Smith v. Workmen's Compensation Appeal Board (Futura Industries)*, 80 Pa.Cmwlth. 508, 471 A.2d 1304 (1984).

Employer asserts that, because Claimant did not lose his position as the result of his work injury, Claimant is not entitled to a reinstatement. This argument is based upon this Court's holdings in *Beattie v. Workers' Compensation Appeal Board (Liberty Mutual Insurance Company)*, 713 A.2d 187 (Pa.Cmwlth.1998), and *Campbell v. Workers' Compensation Appeal Board (Foamex)*, 707 A.2d 1188 (Pa. Cmwlth.1998), and reaches the conclusion that Claimant's reinstatement petition should be denied because his loss of earnings was not due to his work-related injury. But in both of these cases, the claimants *voluntarily removed themselves from the workforce*, and, of course, the claimants' lack of employment and corresponding loss of earnings was not "work related."

In *Beattie,* the claimant originally sustained a disability as the result of undergoing back surgery, after which he became an ordained minister. When he took this position, he signed a supplemental agreement suspending his benefits. After working as a minister, he resigned for personal reasons. Although the WCJ reinstated his total disability benefits, the Board reversed that decision, and this Court affirmed the Board concluding that the claimant failed to establish that he removed himself from the workforce as the result of his work-related injury with his previous employer.

In *Campbell,* the claimant sustained a work-related injury to his lower back and began receiving benefits pursuant to a notice of compensation payable. The claimant returned to work at wages equal to his time of injury wage, and his benefits were suspended by a supplemental agreement. Thereafter, the claimant experienced a recurrence of his total disability and temporary total disability benefits were reinstated. Employer then found the claimant a

modified duty position as a security guard which was approximately 35 miles from his home. Although the claimant worked at this position for a short period, he quit soon after he lost his personal vehicle in divorce proceedings. The WCJ reinstated the claimant's benefits but the Board reversed that decision, and this Court affirmed the Board, concluding that the claimant did not establish that his disability was due to his work injury.

Employer relies on the above cases as support for the proposition that *Claimant* was required to demonstrate that his loss of earnings was directly attributable to his work-injury and that he did not do so in this case because the further reduction of his earning power was caused by a "business decision" unrelated to his work injury. Although we agree with Employer's recitation of the law and the facts of *Beattie* and *Campbell,* we cannot agree with its application of that law to this case.

The distinguishing element in both *Campbell* and *Beattie,* is the fact that, in both cases, it was the claimant who voluntarily made the decision to leave his position. Clearly, in both of those cases, the claimants' actions directly caused the loss of earning power, and, accordingly, in each case, it was the **claimant's** burden to establish that he removed himself from the workforce for reasons related to his work injury.

In the present case, however, as noted above, the parties agree that that it was the decision of Fugh, Claimant's second employer, to terminate Claimant's employment for "business reasons." It is significant to note that, if Employer had done the exact same thing, *i.e.,* ended or even suspended Claimant's employment for business reasons while the Claimant was disabled, Claimant would be entitled to a reinstatement of his total disability benefits. *Smith.* That is exactly what occurred in *Goodyear v. Workmen's Compensation Appeal Board (Robbins Door and Sash Co.),* 96 Pa.Cmwlth. 647, 508 A.2d 637 (1986). In that case, the claimant

fractured his leg and shoulder while working for his employer. Subsequently, however, he took an assembly job with a second employer for less wages and executed a supplemental agreement reducing his compensation. Shortly thereafter, the assembly job became unavailable, not because of Claimant's physical condition, but because of economic conditions, *i.e.,* "business reasons." The claimant sought a reinstatement of total disability benefits, alleging that he still could not perform his time-of-injury job. The WCJ agreed, but the Board reversed. In reversing the Board's decision, we stated as follows:

> Where a claimant has been laid off from a modified job provided by the employer, and seeks reinstatement of benefits, he has met the burden of proof by establishing his inability to perform his time-of-injury job. *Smith v. Workmen's Compensation Appeal Board (Futura Industries),* 80 Pa.Cmwlth. 508, 471 A.2d 1304 (1984). The employer then has the burden of proving the availability of work which the claimant is capable of performing. *Id.*
>
> The [WCJ] found that the claimant had shown that "he remains disabled from performing the occupation at which he was injured originally." Thus, the claimant met his burden of proof under *Smith.*

*Goodyear,* 508 A.2d at 638.

■ Like the claimant in *Goodyear,* the Claimant in the present case has established that he cannot perform his time-of-injury position, because of his restrictions which are work-related, and, therefore, Claimant is entitled to the presumption that he is still disabled. Therefore, the burden was on Employer to show that work was available to him.

■ Moreover, it is readily apparent that through no fault of his own, Claimant has been placed in the precise position that he was when he was laid off from Employer originally: He is physically incapable of performing his time-of-injury job without

restrictions. Accordingly, because Claimant, **through no fault of his own**, is again incapable of performing his time-of-injury position without restrictions, the burden is on Employer to demonstrate the existence of an available job within Claimant's restrictions **or** pay Claimant the difference between his time-of-injury wage and his wage following the termination. *See. Trumbull v. Workmen's Compensation Appeal Board (Helen Mining Co.)*, 683 A.2d 342 (Pa.Cmwlth.1996).

Therefore, we conclude that, during the period of time after Fugh terminated Claimant to the time when Claimant began his work with Climatech, he is entitled to continuing benefits. Employer, of course, did not present evidence of available work within Claimant's restrictions during that time period. Therefore, Claimant's earning power during that time was reduced to zero, and he is entitled to partial disability benefits at the total disability rate. *Diffenderfer v. Workmen's Compensation Appeal Board (Rabestos Manhatten, Inc.)*, 651 A.2d 1178 (Pa.Cmwlth.1994), *petition for allowance of appeal denied*, 540 Pa. 642, 659 A.2d 561 (1995). Of course, Claimant's disability rate declined after he found work with Climatech and began to earn wages, albeit less than his pre-injury wage, and he was, thus, entitled to the same amount of partial disability benefits that he had been receiving prior to his termination.

Affirmed.

### ORDER

**NOW**, May 12, 1999, the order of the Workers' Compensation Appeal Board in the above-captioned matter is hereby affirmed.