CITY OF PHILADELPHIA, Petitioner

v.

WORKERS' COMPENSATION APPEAL BOARD (McGINN), Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 27, 2005.

Decided July 21, 2005.

Lawrence Doherty, Melrose Park, for petitioner.

Richard R. Di Stefano, Philadelphia, for respondent.

BEFORE: PELLEGRINI, J., LEAVITT, J., and FLAHERTY, Senior Judge.

OPINION BY Senior Judge FLAHERTY.

The City of Philadelphia (City) petitions for review of a decision of the Workers' Compensation Appeal Board (Board) which reversed the decision of the Workers' Compensation Judge (WCJ) and granted Emmett McGinn's (Claimant) petition for reinstatement of total disability benefits. We affirm.

On October 27, 1990, Claimant retired from the City Fire Department at the age of 45. Claimant had worked 21 years as a firefighter for City and he received a regular service pension. Prior to his retirement, Claimant also held a second job as a plumber. After his retirement, Claimant passed the test and became a master

plumber and opened his own general plumbing business.

In August of 1993, Claimant filed a claim petition alleging that he had quit his firefighting position due to occupational exposure to heat, smoke, fumes, etc., which resulted in lung disease and disabled him from his employment with City. Claimant continued his plumbing business.

On April 15th of 1999, the WCJ awarded Claimant total disability benefits. The WCJ accepted as credible Claimant's medical expert, Dr. Jonathan Gelfand, M.D. (Dr. Gelfand), board certified in internal medicine and pulmonary disease. Dr. Gelfand diagnosed Claimant with severe chronic obstructive lung disease with components of emphysema and chronic bronchitis. Dr. Gelfand opined that occupational exposure to the hazards of firefighting was a substantial contributing factor in the development of Claimant's chronic obstructive lung disease. The WCJ further found in pertinent part as follows:

4. I have carefully reviewed the medical evidence presented in this matter and I find Dr. Gelfand's testimony regarding the cause of Claimant's lung disease more persuasive than Dr. Epstein's testimony. Dr. Gelfand's testimony regarding the cause of Claimant's lung disease is more persuasive given Claimant's credible testimony regarding his repeated exposures while fighting fires during his twenty-one years as a firefighter.

5. Based upon the testimony of Dr. Gelfand I find that Claimant sustained chronic obstructive lung disease as a result of his employment as a firefighter with Employer. I further find that claimant has been disabled from his position as a firefighter since October 27, 1990. To the extent that Dr. Epstein's

testimony is inconsistent with these findings Dr. Epstein's testimony is rejected.

WCJ Decision, April 15, 1999, Findings of Fact Nos. 4–5, at 5.

The WCJ further denied the City credit for Claimant's earnings in self-employment as a plumber. The City appealed to the Board. The Board reversed the WCJ on the issue of the City's entitlement to a credit for Claimant's self-employment earnings.

On October 2, 2001, the City filed a notice of suspension based upon Claimant's earnings. In response, on October 22, 2001, Claimant filed an Employee Challenge in which he alleged that his lung disease had worsened, causing him to close his plumbing business as of March 21, 2001. On February 1, 2002, Claimant filed a Reinstatement Petition requesting the reinstatement of temporary total disability benefits as of March 21, 2001. Claimant's petitions alleged that his lung disease worsened and caused him to close his plumbing business on March 21, 2001.

Claimant testified on his own behalf that in 1995, he could no longer perform the manual labor required in his plumbing business. He stated that in 1995, he did continue his business by giving customers estimates and hiring men to do the labor. Claimant further testified that in 1998, he had lung reduction surgery and remained on a lung transplant list. Claimant stated that as of March 21, 2001, he was unable to perform the customer estimates for his plumbing business and therefore, closed the business. Claimant further stated that his condition has worsened since he retired from the fire department and that he continues to see physicians regarding his disease. Claimant testified that he needs an oxygen apparatus, no longer drives and is not capable of gainful employment.

Next, Claimant presented the deposition testimony of Dr. Gelfand. Dr. Gelfand

stated that he examined Claimant in 1994, 2001 and 2002 at the request of Claimant's attorney, but that he never treated Claimant. Dr. Gelfand testified that after his examination of Claimant in 1994, he opined that Claimant had severe chronic obstructive disease, which was unresponsive to medical therapy. Dr. Gelfand further opined that Claimant's condition has worsened since then to show severe obstruction, severe hyperinflation with air trapping and severe reduction in diffusion. Dr. Gelfand stated that Claimant's pulmonary function had deteriorated significantly and that he is unable to do work of any kind.

City presented the deposition testimony of Dr. Scott Manaker, M.D., Ph.D., board certified in internal medicine, pulmonary disease, and critical care medicine (Dr. Manaker). Dr. Manaker testified that he examined Claimant on April 7, 2002. Dr. Manaker opined that as of April 7, 2002, all of Claimant's occupationally-induced chronic obstructive pulmonary disease had resolved, leaving only evidence of the tobacco-induced component of Claimant's disease. Dr. Manaker opined that Claimant's chronic obstructive pulmonary disease was now explained by Claimant's extensive history of heavy smoking, not his history as a firefighter. Dr. Manaker stated that severe chronic obstructive pulmonary disease of the occupationally-induced type can be reversible. However, he also stated that severe chronic obstructive pulmonary disease caused by smoking cigarettes is not reversible. Dr. Manaker stated that the increase in Claimant's disability level could not be attributed to occupational exposure and that, therefore, Claimant's increased level of disability is not work-related.

The WCJ found Dr. Manaker more credible than Dr. Gelfand. The WCJ stated that Claimant did not prove or establish an increased work-related impairment which would be responsible for his increased loss of earning power. The WCJ denied and dismissed Claimant's challenge and reinstatement petition. Claimant appealed to the Board.

The Board reversed the WCJ, citing *Hebden v. Workmen's Compensation Appeal Board (Bethenergy Mines, Inc.)*, 534 Pa. 327, 632 A.2d 1302 (1993), which found that relitigating the basic cause of the disease is barred by the doctrine of res judicata. The Board further found that the City could not meet its burden of proving that the occupational disease was reversible by re-litigating the extent cigarette smoking as opposed to work exposure caused Claimant's disability. City now petitions our Court for review.[1]

The City contends that the Board erred in reversing the WCJ's denial of Claimant's petition as the Board incorrectly applied *Hebden* to the record evidence and in precluding as a matter of law the City's evidence that showed that the occupational component of Claimant's lung disease was no longer present.

In Section 108 of the Workers Compensation Act, Act of June 2, 1915, P.L. 736, as amended, occupational diseases of firemen were established as follows:

(o) Diseases of the heart and lungs, resulting in either temporary or permanent total or partial disability or death, after four years or more of service in firefighting for the benefit or safety of the public, caused by extreme over-exertion in times of stress or danger or by

---

1. Our review is limited to a determination of whether constitutional rights were violated, whether an error of law was committed and whether the necessary findings are supported by substantial evidence. *Boehm v. Workmen's Compensation Appeal Board (United Parcel Services)*, 133 Pa.Cmwlth.455, 576 A.2d 1163 (1990).

exposure to heat, smoke, fumes or gasses, arising directly out of the employment of any such firemen.

77 P.S. § 27.1(*o*), *added by*, Section 1 of the Act of October 17, 1972, P.L. 930.

In a petition to reinstate total disability from partial disability, a claimant must show there is an increase in wage loss as a result of the original work related injury. *Pappans Family Restaurant v. Workers' Compensation Appeal Board*, 729 A.2d 661 (Pa.Cmwlth.1999). The burden of proof in a reinstatement petition varies depending upon whether the claimant's benefits were suspended or terminated. If the benefits were terminated, the claimant must prove that his or her work-related disability has increased or recurred and that his or her physical condition has actually changed in some manner. In the case of benefits merely being suspended, the claimant must prove that his earning power is once again adversely affected by the disability and that his work-related disability continues. However, he is not required to produce medical evidence on the cause of his disability. In a suspension case, the employer acknowledges that the claimant's disability is continuing. *Palmer v. Workers' Compensation Appeal Board (Helen Mining Company)*, 710 A.2d 1245 (Pa.Cmwlth.1998), see also, *Stevens v. Workers' Compensation Appeal Board*, 563 Pa. 297, 760 A.2d 369 (2000).

In the present controversy, the Board was correct in determining that the Claimant met his burden of proof in his reinstatement petition. The present case involved a suspension of benefits by the City. Thus, Claimant did not have to produce any medical evidence on the cause of his disability. The Claimant's medical expert and the City's medical expert testified that the Claimant was totally disabled due to chronic obstructive lung disease and is unable to work. Thus, Claimant met his burden through this testimony.

The City argues that the Board erred in relying on *Hebden* in this case. We disagree. In *Hebden*, Thomas Hebden (Hebden) received partial disability benefits for occupational pulmonary lung disease as a result of working as a coal miner for over thirty years. Hebden's employer attempted to terminate his benefits, alleging that he no longer had the occupational disease. Our Supreme Court determined that in order to allow re-examination of the cause of an occupational disease, we must first determine whether the occupational disease is reversible. In *Hebden*, pulmonary lung disease was found to be irreversible. Such a finding then precluded his employer from trying to show that the disease had, in fact, been reversed. The Supreme Court stated that to permit employer to address why the disease had been reversed "would simply be allowing it to revisit the initial finding of [Hebden]'s disability and, in a disguised way, to relitigate that issue. Sound principles of res judicata, collateral estoppel and issue preclusion bar such an attempt. Proof of a miracle cure must be left to theologians." *Id.* 534 Pa. at 332, 632 A.2d at 1305.

In the present controversy, the Board was correct in determining that City could not reargue the cause of Claimant's disease. The WCJ in the initial opinion did not find that cigarette smoking was any part of the cause of Claimant's disease. The WCJ found that Claimant's disease was caused by "his repeated exposures while fighting fires during his twenty-one years as a firefighter." WCJ Decision, April 15, 1999, Findings of Fact Nos. 4, at 5. The WCJ's initial opinion states that Claimant has chronic obstructive lung disease due to his occupation as a firefighter. Both the Claimant's medical expert and the City's medical expert testified

that chronic obstructive pulmonary disease is not reversible. Dr. Manaker did claim that Claimant's occupationally-induced component of chronic obstructive pulmonary disease had resolved, but that Claimant's tobacco-induced component had worsened. However, *Hebden* states that the disease itself must be reversible. A change in the cause or a finding of a different cause does not equal a finding that the disease itself is reversible. Also, the initial decision of the WCJ did not find that Claimant was disabled due to his tobacco use. Thus, as the City cannot relitigate the cause of Claimant's disability, the Board was correct in determining that this testimony was incompetent as a matter of law.

The Board was correct in its determination that the WCJ erred in finding that the burden was on the Claimant to prove that his increase in disability was caused by his work as a firefighter when this had already been proven initially and in determining that relitigating the disease process was barred by the doctrine of res judicata.

Accordingly, we affirm.

### ORDER

AND NOW, this 21st day of July, 2005, the Order of the Workers' Compensation Appeal Board in the above-captioned matter is affirmed.