IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alex E. Paris Contracting            :
Company, Inc. and Zurich              :
American Insurance Company,      :
            Petitioners          :
                                 :
         v.                   :   No. 1156 C.D. 2016
                                 :   Submitted: December 2, 2016
Workers' Compensation Appeal      :
Board (Mace),                   :
            Respondent        :

BEFORE:    HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE DAN PELLEGRINI, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY PRESIDENT JUDGE LEAVITT                  FILED: March 9, 2017

         Alex E. Paris Contracting Company, Inc. and Zurich American Insurance Company (collectively, Employer) petition for review of an adjudication of the Workers' Compensation Appeal Board (Board) granting the reinstatement of compensation to Joshua Mace (Claimant). In doing so, the Board affirmed the decision of the Workers' Compensation Judge (WCJ) that Claimant met his burden of proving his earning power was adversely affected by his prior work injury for a closed period of time. Employer contends that the WCJ failed to issue a reasoned decision and, further, Claimant did not meet his burden of proof. We affirm.

         In 2005, Claimant began working for Employer as a laborer. In 2012,[1] he was inside a tank at a power plant, water-blasting it clean, when "a piece of material about 400 to 500 pounds fell off, covering [him] up from the cheeks

_____

[1] Claimant was 28 years old at the time of the injury.

down below [his] shoulders." WCJ Hearing, 12/4/2013, Notes of Testimony (N.T.) at 9; Reproduced Record at 19a (R.R. __).[2] On February 1, 2013, Claimant and Employer entered into an agreement for compensation that acknowledged that Claimant suffered a left shoulder work injury and provided compensation pursuant to the Workers' Compensation Act (Act)[3] from January 6, 2012, through September 1, 2012, when benefits were suspended. R.R. 7a. The suspension of benefits was based on Claimant's return to work with no loss of wages.

On October 2, 2013, Claimant filed a petition to reinstate compensation benefits, alleging that his 2012 work injury had worsened as of September 6, 2013. Employer contested liability and a hearing was held before the WCJ.

Claimant testified that his 2012 injury required surgery on his left shoulder, which was done by Patrick J. DeMeo, M.D. Claimant continued to suffer pain, but he returned to work. Instead of returning to his original position as a water-blaster, he was placed on "hole watch," meaning he "watched guys inside of the tank." WCJ Hearing, 12/4/2013, N.T. 11; R.R. 21a. Thereafter, he transferred to "an asphalt crew." *Id.* Claimant was able to work, despite his continued pain, but he was not able to return to his normal activities. His family owned a farm, on which he had always worked after work and on weekends. Because of his shoulder pain, he was no longer able to help his family "put up hay." *Id.* at 18; R.R. 28a.

---

[2] Both Claimant's medical expert and Employer's medical expert identified the "material" as gypsum.

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§1-1041.4, 2501-2708.

On January 14, 2013, Claimant treated with Dr. DeMeo for two new injuries that were not work-related. One injury occurred when Claimant slipped and fell on ice, hitting his left elbow. The second occurred when Claimant fell, striking his left shoulder. Dr. DeMeo prescribed a few weeks of physical therapy, which Claimant completed without missing work.

In September 2013, Claimant's left shoulder pain suddenly worsened while sliding a wheeled computer chair across the floor in his house. Claimant testified that pushing the chair was not strenuous; it rolled easily across his low-pile carpeting. On October 1, 2013, Dr. DeMeo operated on Claimant's left shoulder. Dr. DeMeo released Claimant to return to work, with the restriction that he lift no more than 50 pounds. On May 28, 2014, Claimant returned to work with Employer as a truck driver, with no loss in wages. Claimant testified that he has occasional soreness or stiffness in his left shoulder, but it does not prevent him from working.

Claimant presented the deposition testimony of Dr. DeMeo, who is board-certified in orthopedic surgery. In 2012, Dr. DeMeo did surgery on Claimant's left shoulder, repairing a Type 2 superior labrum from anterior to posterior (SLAP) tear. Dr. DeMeo explained that "Type 2 means that the labrum itself is lifted off the superior glenoid rim[,]" *i.e.*, the bone. DeMeo Deposition, N.T. 7; R.R. 50a. Following his recovery from the surgery, Claimant returned to work. In January 2013, Dr. DeMeo treated Claimant again for left elbow and left shoulder pain after his two falls. Dr. DeMeo prescribed physical therapy, which Claimant successfully completed.

On August 12, 2013, Claimant returned to Dr. DeMeo, complaining of left shoulder pain that began when he "picked up a computer chair." *Id.* at 9; R.R.

3

52a. Dr. DeMeo diagnosed Claimant with "a recurrent SLAP tear, as well as some fissuring of the anterior glenoid cartilage." *Id.* at 10; R.R. 53a. Dr. DeMeo's surgery revealed that Claimant did not have a detached SLAP tear but, rather, a "fraying of the labrum itself, which … most likely was related to either the accident or the first surgery." *Id*. at 11; R.R. 54a. The fraying of the labrum is known as a Type 1 SLAP tear.

Dr. DeMeo explained that the fraying related to the 2012 work injury, but it also could be related to any of the "three incidents" that occurred in 2013. *Id.* Upon questioning, Dr. DeMeo explained "if you have a tear, especially a SLAP tear – and I see this a lot in my professional baseball players – you're definitely at risk for recurrence of that tear … so I would say that, more likely than not, [the second tear] was probably related to the first tear." *Id*. at 13; R.R. 56a. Dr. DeMeo opined that Claimant was "at risk for having more damage done anyway because of his first surgery." *Id.* at 14; R.R. 57a.

Employer presented the deposition testimony of Oriente A. DiTano, M.D., who is also board-certified in orthopedic surgery, and who did an independent medical examination (IME) of Claimant. Dr. DiTano stated that Claimant's second surgery treated a Type 1 SLAP tear, and the first surgery treated a Type 2 SLAP tear, where the labrum had pulled off the bone.[4] Dr. DiTano Deposition, N.T. 8; R.R. 115a. Dr. DiTano opined that Claimant's second surgery was not related to his 2012 work injury because the fraying of the labrum was not

---

[4] Dr. DiTano's deposition transcript numbers SLAP tears using the Roman numeral system; Dr. DeMeo's deposition transcript numbers SLAP tears using the Arabic numeral system. For consistency, we will use the Arabic numeral system.

4

identified in the first surgery. Dr. DiTano believed the fraying was probably related to one of the three falls Claimant experienced in 2013.

Claimant's first surgery reanchored the labrum to the bone, which required stretching the ligament. Dr. DiTano did not believe the stretching would weaken the ligament. Usually, a Type 1 SLAP tear is seen in patients over 40 years old because it is a degenerative condition. It would be unusual for a 30-year-old, such as Claimant, to have a degenerative type tear, but Dr. DiTano stated that the three 2013 incidents could have accelerated this pathology.

The WCJ credited the testimony of Claimant and Dr. DeMeo and rejected Dr. DiTano's testimony. The WCJ noted that Claimant returned to work after his 2012 surgery, but he continued to experience pain severe enough to limit his activities on the farm. By contrast, Claimant's slip and fall incidents in January 2013 did not impede his ability to work and resolved with physical therapy. The shoulder injury in August 2013, while pushing a "cheap wheeled chair" over "an industrial-type carpet," led to surgery. WCJ Decision, Finding of Fact 2(h); R.R. 193a. The WCJ credited Dr. DeMeo's testimony that a patient who has had a Type 2 SLAP tear repaired is at risk for recurrence because the labrum has weakened. But for that weakening, Claimant's pushing a computer chair would not have caused the Type 1 SLAP tear. The WCJ granted Claimant's reinstatement petition and ordered Employer to pay benefits from September 6, 2013, through May 28, 2014, when Claimant returned to work.

Employer appealed to the Board. Employer argued that there were inconsistencies in the testimony. It was not clear whether Claimant lifted or slid the computer chair. Further, Claimant stated that he was released to light duty work after his 2012 surgery, but Dr. DeMeo testified that Claimant was released without

5

restrictions.  Employer claimed that the WCJ's decision was not reasoned because it did not address these inconsistences in the testimony.  Employer also claimed that Dr. DeMeo's testimony did not support a finding that the 2013 injury was related to the 2012 injury because  Dr. DeMeo conceded that he could not be sure whether the Type 1 SLAP tear was caused by Claimant's falls.

The Board rejected Employer's arguments as nothing more than an attempt to invade the fact finding responsibility of the WCJ.  It did not agree that Dr. DeMeo's testimony was equivocal.  He stated that the 2013 slip and falls could have contributed to the need for surgery, but he opined that it was the first surgery that left Claimant at risk for a subsequent labrum tear.

Employer has petitioned for this Court's review.[5]  Employer argues, first, that the Claimant failed to meet his burden of proof with substantial and competent medical evidence.  Second, it argues that the WCJ did not issue a reasoned decision.

We begin with a review of the principles that govern a reinstatement of benefits.  We have explained as follows:

> Where a claimant seeks a reinstatement of benefits following a suspension, there remains a presumption that the work-related injury has not fully resolved. *Hinton v. Workers' Compensation Appeal Board (City of Philadelphia)*, 787 A.2d 453, 456 n.7 (Pa. Cmwlth. 2001). In a suspension, the claimant's work injury, although not fully resolved, does not adversely affect his ability to work. Thus, when petitioning for reinstatement the claimant "is not required to produce medical evidence on the

---

[5] This Court's review of a workers' compensation adjudication determines whether an error of law or a constitutional violation was committed or whether the findings of fact are supported by substantial, competent evidence.  *Myers v. Workers' Compensation Appeal Board (University of Pennsylvania and Alexsis, Inc.)*, 782 A.2d 1108, 1110 n.1 (Pa. Cmwlth. 2001).

6

cause of his disability." *City of Philadelphia v. Workers' Compensation Appeal Board (McGinn)*, 879 A.2d 838, 842 (Pa. Cmwlth. 2005). However, the claimant must establish "that his earning power is once again adversely affected" and that "it is the same disability ... for which he initially received workmen's compensation benefits." *Riley Welding & Fabricating, Inc., v. Workmen's Compensation Appeal Board (DeGroft)*, [] 608 A.2d 598, 600 ([Pa. Cmwlth.]1992) (emphasis omitted).

*Soja v. Workers' Compensation Appeal Board (Hillis-Carnes Engineering Associates)*, 33 A.3d 702, 708 (Pa. Cmwlth. 2011). Where there is no obvious causal connection between the original and subsequent injury, the claimant must prove that the work injury caused the subsequent disability. *Sacred Heart Hospital v. Workers' Compensation Appeal Board (Mutis)*, 703 A.2d 577, 579 (Pa. Cmwlth. 1997). This burden may be satisfied through expert medical testimony. *Serrano v. Workers' Compensation Appeal Board (Chain Bike Corporation)*, 718 A.2d 885, 890 (Pa. Cmwlth. 1998).

Employer argues that Dr. DeMeo's testimony was equivocal because he acknowledged that the 2013 falls, which were not work-related, may have contributed to the Type 1 SLAP tear. Claimant responds that Dr. DeMeo stated, "if you have a tear, especially a SLAP tear … you're definitely at risk for recurrence of that tear." DeMeo Deposition, N.T. 13; R.R. 56a. Dr. DeMeo explained that "[i]n other words, I can't make it better than God did." *Id*. at 15; R.R. 58a. Further, "[w]hat I'm saying is that because he had an initial tear and subsequent repair, he's at higher risk for subsequent tears and repairs." *Id*.

This Court has explained that the use of the words "most likely" or "probably" do not render a medical opinion equivocal. *Deitrich v. Workmen's Compensation Appeal Board (Shamokin Cycle Shop)*, 584 A.2d 372, 375 (Pa. Cmwlth. 1990). The medical testimony must be examined in its entirety to

7

determine its sufficiency.  *Wilkes-Barre City v. Workmen's Compensation Appeal Board*, 420 A.2d 795, 797 (Pa. Cmwlth. 1980).  Further,

> as to facts which a claimant must prove by medical evidence, it is sufficient that his medical expert, after providing a foundation, testify that in his professional opinion or that he believes or that he thinks the facts exist. The claimant has, in such event, produced competent evidence of the facts which, if accepted by the factfinder will support an award, even if the medical witness admits to uncertainty, reservation, doubt or lack of information with respect to medical and scientific details; so long as the witness does not recant the opinion or belief first expressed.

*Philadelphia College of Osteopathic Medicine v. Workmen's Compensation Appeal Board (Lucas)*, 465 A.2d 132, 135 (Pa. Cmwlth. 1983).

Dr. DeMeo was uncertain about the contribution of the non-work incidents to Claimant's Type 1 SLAP tear.  However, he testified that Claimant's work-related surgery left him at risk for another tear, making this "causally related to the initial injury he sustained on January 5, 2012."  DeMeo Report, 11/6/2013; R.R. 10a.

Employer's medical expert, Dr. DiTano, opined that a Type 1 SLAP tear is usually degenerative in nature and acknowledged that it would be unusual for someone of Claimant's youth.  He believed the three slip and fall incidents accelerated the pathology.  The WCJ rejected this opinion.  The WCJ explained as follows:

> This is illustrated by Dr. DiTano's admission that it would be unusual for someone of Claimant's age to have a fraying-type labral tear but for the traumas he has previously sustained, but eliminating from the list of causal factors the obvious most significant trauma that occurred when several hundred pounds of gypsum fell on his shoulder at work.  To reach his opinion

8

> Dr. DiTano rejects the credible testimony of Claimant that he continued to be limited and experience pain even after initially returning to work, thus inappropriately inserting his own judgment in areas that are the province of this Workers' Compensation Judge.

WCJ Decision, Finding of Fact 6(c); R.R. 198a. Reviewing Dr. DeMeo's testimony in its entirety, we conclude it was not equivocal and sufficient to prove that Claimant's Type 1 SLAP tear was causally related to his 2012 work injury. Claimant satisfied his burden of proof.

In its second issue, Employer asserts that the WCJ did not issue a reasoned decision. Employer points to two inconsistencies in the record. Claimant testified that his shoulder began to hurt when he *slid* a computer chair across the floor. On the other hand, Drs. DeMeo and DiTano described Claimant as *picking up* the computer chair. Claimant testified that he did not return to his pre-injury water-blasting job, but Dr. DeMeo testified that he released Claimant to return to work without restrictions. The question is whether these inconsistencies were resolved in a reasoned opinion.

The hearing before the WCJ is governed by Section 422(a) of the Act, which states, in relevant part, as follows:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. *When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence.* Uncontroverted evidence may not be rejected for no reason or for an irrational

9

reason; the workers' compensation judge must identify that evidence and explain adequately the reasons for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. §834 (emphasis added). "A medical expert's opinion is rendered incompetent only if it is based *solely* on inaccurate or false information." *Degraw v. Workers' Compensation Appeal Board (Redner's Warehouse Markets, Inc.)*, 926 A.2d 997, 1001 (Pa. Cmwlth. 2007) (emphasis added). However, a medical expert need "not know all of the intricate details surrounding the mechanics of [the] injury." *Id*. at 1002 n.4. Lack of knowledge of the mechanics of an injury "goes to the weight to be given to [a medical expert's] testimony, not its competency." *Id*. at 1001.

Employer argues that the discrepancy about whether Claimant was sliding the chair, or picking it up, is fatal. Claimant was asked by Employer's counsel about the discrepancy between his account of the event and Dr. DeMeo's:

Q. Okay. All right. And I take it, during this entire time, you described the event as picking up the computer chair like you were stabbed with a knife.

A. There's a little bit of a problem with that.

Q. Okay.

A. I was sliding the chair.

Q. Okay.

A. The reason [Dr. DeMeo] put in picking up --- you know how you get up and slide it in? That's what I was doing.

Q. Okay. He says picking up. You're telling me sliding.

A. Right.

10

WCJ Hearing, 12/4/2013, N.T. 21-22; R.R. 31a-32a. Employer presented no evidence that picking up the chair, as opposed to sliding it, was even relevant to causation. Neither doctor was questioned on this point. In any case, the WCJ credited Claimant's statement that he slid the chair. She explained why she believed Claimant, and it was because his actions throughout showed a strong desire to return to work and no indication of malingering. WCJ Decision, Finding of Fact 6(a); R.R. 210a.

Employer complains that the WCJ misrepresented Dr. DiTano's testimony by stating he did not know the type of computer chair involved or the type of surface it was slid across. Dr. DiTano testified as follows:

> Q. Do you know what type of computer chair this was?
>
> A. No.
>
> Q. Do you know what type of … surface it was being moved on?
>
> A. I did not ask him that. I don't know.

DiTano Deposition, N.T. 21; R.R. 128a. There was no misrepresentation of the evidence.

Employer's final claim is that the WCJ did not address the discrepancy in Claimant's and Dr. DeMeo's testimony regarding Claimant's return to work following his first surgery. Claimant testified that when he returned to work in August 2012, he did not return to his pre-injury job "[b]ecause [Dr. DeMeo] did not want me to water-blast." WCJ Hearing, 12/4/2013, N.T. 11; R.R. 21a. Dr. DeMeo testified that Claimant was released to his "water blasting duties." DeMeo Deposition, N.T. 8; R.R. 51a.

11

Again, Employer does not explain why this minor discrepancy is relevant. As this Court has explained:

> Section 422(a) of the Act does not require the WCJ to address all of the evidence presented in a proceeding in her adjudication. Rather, the WCJ is only required to generally set forth the reasons for making the finding and is only required to make those findings necessary to resolve the issues that were raised by the evidence and which are relevant to making the decision. *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 753 A.2d 293 (Pa.Cmwlth.2000). Because the WCJ was not required to discuss all of the evidence presented and clearly set forth the reasons for her decision, she met the requirements of Section 422(a).

*Montgomery Tank Lines v. Workers' Compensation Appeal Board (Humphries)*, 792 A.2d 6, 13 n.10 (Pa. Cmwlth. 2002). It is not disputed that Claimant returned to work following his first surgery. It is also not disputed that Claimant returned to a different position with Employer and never resumed his pre-injury water-blasting position. Whether or not Claimant was medically able to resume water-blasting after his first surgery was not an issue in this case. The issue before the WCJ was whether Claimant's second surgery was related to his prior work-related condition. The WCJ is not required to discuss irrelevant evidence. As such, we reject this contention of error.

For the above-stated reasons, we affirm the Board's adjudication.

_____
MARY HANNAH LEAVITT, President Judge

12

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Alex E. Paris Contracting       :
Company, Inc. and Zurich       :
American Insurance Company,    :
          Petitioners      :
                       :
          v.          :  No. 1156 C.D. 2016
                       :
Workers' Compensation Appeal  :
Board (Mace),            :
          Respondent      :

## **O R D E R**

AND NOW, this 9th day of March, 2017, the order of the Workers'
Compensation Appeal Board, dated June 15, 2016, is AFFIRMED.

_____
MARY HANNAH LEAVITT, President Judge